IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ISMAIL RAHMAAN,

    Plaintiff,

v.

KEITH E. MCQUILKIN, in his individual and official capacity, and JOHN DOES No. 1–3, in their individual and official capacities,

    Defendants.

Civil Action No.
1:19-cv-02962-SDG

## ORDER

This matter is before the Court on Defendant Keith E. McQuilkin's motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e) [ECF 7]. For the reasons stated below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the request for a more definite statement under Fed. R. Civ. P. 12(e). The motion is **DENIED WITHOUT PREJUDICE** as to the request to dismiss.

## I. BACKGROUND

### a. Factual Background

The following facts are accepted as true for purpose of this motion.[1] On May 13, 2017, Plaintiff Ismail Rahmaan was driving his personal vehicle to sell his dirt bike when he was assaulted at gun point by several adult males (the "assailants").[2] Rahmaan successfully defended himself, and he was able to disarm one of the assailants, Quayveon Palmer.[3] As Palmer then used a second firearm to shoot at Rahmaan, Rahmaan used the first firearm against Palmer.[4] Palmer suffered multiple gunshot wounds and, ultimately, died as a result.[5] Rahmaan received serious bodily injuries and was taken by ambulance to the hospital for treatment, which included surgery.[6] Neither firearm was recovered.[7]

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2] ECF 1-1 (Am. Compl.), ¶¶ 7–9. *See generally* ECF 1-1, at 31–45 (Am. Compl.).

[3] *Id.* ¶¶ 10–11.

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 12.

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 13.

DeKalb County Police Department ("DCPD") officers were dispatched to the scene of the altercation.[8] Officer Luong conducted the initial investigation.[9] His Incident Report was based on the witness statements and evidence he collected that day.[10] The report listed Rahmaan as the victim and Palmer as the offender.[11] On May 15, 2017, however, Keith McQuilkin, a detective with the DCPD, appeared before DeKalb County Magistrate Judge Haddad and swore out an affidavit in which he identified Rahmaan as the primary aggressor and accused him of murdering Palmer.[12] Based on McQuilkin's sworn affidavit, Judge Haddad issued an arrest warrant for Rahmaan.[13] Later that day, Rahmaan was arrested, taken into custody, and transported to the DeKalb County Jail.[14]

---

[8]   *Id.* ¶ 15.

[9]   *Id.* ¶ 16.

[10]  *Id.* ¶ 17.

[11]  *Id.* ¶ 17.

[12]  *Id.* ¶ 19B. The Amended Complaint includes two paragraphs numbered "19." For ease of reference, the Court will refer to the first paragraph 19 as 19A and the second as 19B. The Amended Complaint does not state whether McQuilkin was at the scene of the altercation or how he otherwise became involved in this matter.

[13]  *Id.* ¶ 20.

[14]  *Id.* ¶ 23.

On June 2, 2017, a preliminary hearing was held in Rahmaan's criminal case.[15] After reviewing the State's evidence and hearing Rahmaan's testimony, DeKalb County Magistrate Judge Indermark dismissed the charges against Rahmaan.[16] The Amended Complaint does not state the grounds for dismissal. Rahmaan was in custody from the date of his arrest on May 15, 2017, until the charges were dismissed on June 2, 2017.[17] On December 26, 2018, the DeKalb County District Attorney's Office filed a Notice of Disposition of Charges announcing that the charges against Rahmaan would not be brought before the Grand Jury.[18]

b.     **Procedural History**

On May 13, 2019, Rahmaan filed his original Complaint in the State Court of DeKalb County, Georgia.[19] On May 15, 2019, Rahmaan amended his pleading to correct scrivener's errors.[20] In the Amended Complaint, he asserts 42 U.S.C. §

---

[15]   *Id.* ¶ 27.

[16]   *Id.*

[17]   *Id.* ¶ 24. The Amended Complaint contends these events occurred on May 15 and June 2, 2019, but that appears to be a typo which should read May 15 and June 2, 2017.

[18]   *Id.* ¶ 28.

[19]   ECF 1-1, at 2–17 (Compl.).

[20]   *Id.*, at 31.

1983 claims for false arrest (Count I) and malicious prosecution (Count II).[21] He also asserts Georgia state law claims for malicious prosecution (Count III), false imprisonment (Count IV), negligence (Count V), false arrest (Count VI), and punitive damages (Count VII).[22]

On June 27, 2019, McQuilkin removed the case to this Court.[23] On July 19, 2019, he moved to dismiss the Amended Complaint on several grounds, including but not limited to the shotgun pleading nature of the Amended Complaint, the federal prohibition on fictitious-party pleading, and various legal immunity defenses.[24] Alternatively, McQuilkin moved for the Court to order Rahmaan to file a more definite statement under Fed. R. Civ. P. 12(e).[25]

## II.   Legal Standard

The federal rules require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]his means that 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Estate of Bass v. Regions*

---

[21]   *Id.* ¶¶ 28–42.

[22]   *Id.* ¶¶ 43–57.

[23]   ECF 1.

[24]   ECF 7-1.

[25]   *Id.* at 3.

*Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

**III.   Discussion**

    **a.   Shotgun Pleading**

A shotgun pleading fails "to give the defendants adequate notice of the claims against them and the ground upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). "It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine

with any certainty which factual allegations give rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

Shotgun pleadings "patently violate" the federal pleading standards. *Id.*; *see also Estate of Bass*, 947 F.3d at 1358 ("Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so."). Accordingly, when a district court receives a shotgun pleading, the court "should strike it and instruct counsel to replead the case," rather than "parse out such incomprehensible allegations." *Estate of Bass*, 947 F.3d at 1358 (citation omitted).

The Eleventh Circuit has identified four categories of shotgun pleadings. *Weiland*, 792 F.3d at 1321–23. While these categories are not legally distinct from one another, they are instructive in determining whether a complaint is a shotgun pleading. The categories are: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint";  (2) "a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count

each cause of action or claim for relief"; (4) a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23.

The Amended Complaint suffers from the deficiencies noted in categories one, two, and four. It contains multiple counts with each count adopting all the allegations of the preceding counts; it provides conclusory, vague facts that do not support its causes of action; and it fails to identify which defendants are responsible for which acts.

As it relates to the first category, *each* count of the Amended Complaint adopts all the preceding allegations and counts.[26] By doing so, the Amended Complaint gives no notice to Defendants as to which facts are relevant to each claim. As just one example, Rahmaan brings a claim for punitive damages that realleges all preceding allegations and counts and asserts that "[t]he actions of Defendants, as set forth above" support an award of punitive damages.[27] Punitive damages require more than misconduct, they require "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the

---

[26]   ECF 1-1 (Am. Compl.), ¶¶ 28, 34, 43, 47, 49, 52.

[27]   *Id.* ¶¶ 58–59.

presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. Rahmaan fails to identify which specific allegations, if any, support a finding that Defendants acted with the malice required to obtain punitive damages.

Count V, which pleads a claim of negligence, highlights deficiencies in the first and second categories. There are only three paragraphs written in support of this count.[28] The first paragraph violates the first category in *Weiland* by "re-alleg[ing] every foregoing paragraph as if fully set forth herein" without specifying which facts support a finding of duty, breach, injury, or a causal connection as required to state a negligence claim under Georgia law.[29] Defendants have no notice as to whether the claim of negligence is related to the warrant affidavit, arrest of Rahmaan, his treatment while in custody, or any other potential acts or omissions from which a negligence claim may arise. The second and third paragraphs do not provide any additional insight into this count as they violate the second category in *Weiland* through their conclusory and vague allegations. Those paragraphs state: "Defendants' actions directly violated

---

[28]   *Id*. ¶¶ 49–51.

[29]   *Id*. ¶ 49. "In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." *Vaughan v. Glymph*, 241 Ga. App. 346, 348 (1999) (citing *Tuggle v. Helms*, 231 Ga. App. 899, 901 (1998)).

Georgia statutes constituting negligence per se or negligence as a matter of law," and "Defendants have been negligent, as described above, and said negligence [ ] caused injury to Plaintiff . . . ."[30] Rahmaan provides no facts in support of these conclusory allegations, nor does Rahmaan assert that he is pleading negligence in the alternative.

The Amended Complaint also belongs in the fourth category of shotgun pleadings because it never specifies (1) which actions or omissions were taken by which Defendant; (2) which claims are being asserted against each Defendant; or, (3) whether the claims are made against Defendants in their official or individual capacity, or both.[31] Therefore, the Amended Complaint fails to give Defendants fair notice of the claims against them.

As noted above, shotgun pleadings patently violate the federal pleading standards which require "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009). That factual matter must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" *Twombly*, 550 U.S. at 555. When faced with a shotgun pleading, the Eleventh Circuit has held that district courts should provide

---

[30]   ECF 1-1 (Am. Compl.), ¶¶ 50–51.

[31]   *Id*. ¶¶ 33, 35–36, 40–42, 44–46, 48, 53–57.

the plaintiff with the opportunity to replead. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). This can be done by dismissing the pleading without prejudice, striking portions of the complaint, or ordering a party to file a more definite statement. *Jackson*, 898 F.3d at 1358.

Because McQuilkin's motion seeks relief in the alternative here, the Court finds it appropriate to deny the motion to dismiss without prejudice and grant the motion for a more definite statement. Accordingly, the Court directs Rahmaan to replead within 21 days of this order. Given that Rahmaan will have another chance to assert his claims, the Court will also discuss some of the other deficiencies in the Amended Complaint. These deficiencies, as well as those described above, must be addressed by Rahmaan in his amended pleading.

> b. **Other Deficiencies**
>> *i.* **Federal Law Claims – Fictitious Party Practice**

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). However, there is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be, 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).

The Amended Complaint lists John Does 1–3 as Defendants but does not describe them in any specific manner. Beyond the statement of his belief that "Defendants" are DCPD law enforcement officers,[32] the Amended Complaint alludes to Defendants collectively in various claims throughout the Amended Complaint. However, these vague references do not describe the John Does in a manner sufficient to warrant application of the exception to the general rule against fictitious parties. Therefore, Rahmaan must eliminate the reference to "John Does" or address this issue when repleading.[33]

### ii. Official Capacity

Suits against a government official in his or her official capacity should be treated as suits against the government. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Local governing bodies can be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In the alternative, local governments "may be sued for constitutional

---

[32] *Id.* ¶ 6.

[33] To the extent Rahmaan's repleading contains multiple defendants, he must clearly state the actions taken by and the claims asserted against each defendant with specificity to avoid the same shotgun pleading issues.

deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.

Thus, under *Monell*, Counts I and II against Defendants in their official capacities must be treated as counts against DeKalb County itself. In order to successfully plead such claims, Rahmaan must allege that there was a policy or custom that existed in DeKalb County or DCPD related to any of the acts taken by Defendants. Absent the identification of a relevant policy or custom, the federal law claims against Defendants in their official capacities cannot satisfy the applicable pleading standard.

### iii.   State Law Claims – Sovereign Immunity

"Suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." *Cameron v. Lang*, 274 Ga. 122, 126 (2001) (quotation omitted). Under Georgia law, "[t]he doctrine of sovereign immunity . . . protects all levels of governments from legal action unless they have waived their immunity from suit." *Id.* "Counties are among the protected governmental entities." *Purvis v. City of Atlanta*, 142 F. Supp. 3d 1337, 1348 (N.D. Ga. Sep. 29, 2015) (citing *Gilbert v. Richardson*, 264 Ga. 744, 752 (1994)). The sovereign immunity of a county "can only be waived by an Act of the General

Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. art. I, § 2, para. IX(e).

Here, the allegations in the Amended Complaint provide no basis for the Court to conclude that the General Assembly has waived the county's immunity from suit over these claims. This issue must be also addressed in Rahmaan's amended pleading.

## IV.   CONCLUSION

McQuilkin's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.** The motion is **DENIED WITHOUT PREJUDICE** as to the request to dismiss. The motion is **GRANTED** as to the request for a more definite statement under Fed. R. Civ. P. 12(e). Rahmaan has 21 days from the date of this Order to file a Second Amended Complaint. Rahmaan's Second Amended Complaint must address the deficiencies identified above.

**Failure to comply with this Order may result in the dismissal of this case with prejudice.** *Jackson*, 898 F.3d at 1358–59 (finding that dismissal with prejudice is appropriate if plaintiff repleads with the same deficiencies).

**SO ORDERED** this the 3rd day of April 2020.

*[signature]*

Steven D. Grimberg
United States District Court Judge