IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ISMAIL RAHMAAN,
    Plaintiff,

        v.

KEITH E. MCQUILKIN,
    Defendant.

Civil Action No.
1:19-cv-02962-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Keith E. McQuilkin's motion

to dismiss Plaintiff's Second Amended Complaint [ECF 26]. After careful

consideration of the parties' briefing, the motion to dismiss is **GRANTED IN**

**PART** and **DENIED IN PART.**

## I.    BACKGROUND

The following facts are accepted as true for the purpose of this motion.[1] On

May 13, 2017, Plaintiff Ismail Rahmaan met with an individual at the Austin Oaks

Apartments in Decatur, Georgia to sell his motorcycle.[2] While at Austin Oaks,

several adult men assaulted Rahmaan at gunpoint in an attempt to steal the

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion
      to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable
      inferences therefrom are construed in the light most favorable to the
      plaintiff.").

[2]   ECF 22 (Second Am. Compl.), ¶ 5.

motorcycle.[3] In defending himself, Rahmaan disarmed one of the men, Quayveon Palmer, and took possession of the firearm.[4] After being shot by Palmer with a second firearm, Rahmaan shot Palmer with the firearm he had taken.[5] Palmer ultimately died from multiple gunshot wounds.[6] Neither firearm was recovered.[7]

Several witnesses were interviewed by law enforcement.[8] None of the witnesses stated who instigated the altercation between Rahmaan and Palmer.[9] Consistent with Rahmaan's account, some of the witnesses stated that the two firearms were removed from the scene.[10] In an incident report, an investigating officer classified the event as an armed robbery where Rahmaan was the victim.[11]

---

[3]   *Id.* ¶ 6.

[4]   *Id.* ¶ 7.

[5]   *Id.* ¶ 8.

[6]   *Id.* ¶ 9.

[7]   *Id.* ¶ 10.

[8]   *Id.* ¶¶ 11, 25.

[9]   *Id.* ¶ 25.

[10]  *Id.* ¶ 11.

[11]  *Id.* ¶ 12. Although in the Second Amended Complaint Rahmaan refers to "[t]he investigating officer's incident report" as if there were one report, he later states that "there were many investigating officers who wrote incident reports." ECF 28-1, at 13.

On May 15, 2017, Detective McQuilkin appeared before a magistrate judge in DeKalb County, Georgia magistrate court, and testified under oath that Rahmaan was the primary aggressor and that the witnesses' statements were inconsistent with Rahmaan's statements. The magistrate judge issued a warrant for Rahmaan's arrest and Rahmaan was arrested while in the hospital recovering from his gunshot wounds.[12] Rahmaan was placed in custody until his probable cause hearing, from about May 15, 2017 to June 2, 2017.[13] At the probable cause hearing, the judge dismissed the charges against Rahmaan, finding no probable cause for arrest, and the District Attorney's Office later filed notice that the charges against Rahmaan would not be presented to the grand jury.[14]

Rahmaan filed suit in DeKalb County State Court against McQuilkin and three John Does in their individual and official capacities for violations of 42 U.S.C. § 1983 and Georgia law.[15] McQuilkin removed to this Court.[16] McQuilkin then filed a motion to dismiss Rahmaan's First Amended Complaint, which had been filed

---

[12]   ECF 22, ¶¶ 8, 16.

[13]   *Id.* at ¶ 17.

[14]   *Id.* ¶¶ 18–19.

[15]   ECF 1-1.

[16]   ECF 1.

in state court prior to removal,[17] or, in the alternative, for a more definite statement.[18]

This first motion to dismiss argued that McQuilkin is entitled to qualified immunity as to the § 1983 claims and to protection from the Georgia state law claims under the doctrine of official immunity.[19] McQuilkin also argued that (1) the John Doe defendants should be dismissed; (2) the federal claims could not be brought against him in his official capacity; (3) Rahmaan failed to state a claim under Georgia law; and (4) the First Amended Complaint was an improper shotgun pleading.[20] The Court agreed with McQuilkin's arguments regarding the deficiencies in Rahmaan's claims and granted the motion for a more definite statement under Fed. R. Civ. P. 12(e), allowing Rahmaan an opportunity to replead to cure the deficiencies.[21] The Court denied the motion to dismiss without prejudice.[22]

---

[17]   ECF 7-2.

[18]   ECF 7.

[19]   ECF 7-1, at 6–18.

[20]   ECF 7-1.

[21]   ECF 21.

[22]   *Id.*

Rahmaan filed his Second Amended Complaint on April 23, 2020, dropping the fictitious parties and the claims against McQuilkin in his official capacity.[23] Rahmaan also revised his state law claims to address their characterization as shotgun.[24] McQuilkin now moves to dismiss again, reviving his arguments for qualified and official immunity and arguing that the state law claims fail to state a claim upon which relief can be granted.[25]

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual

---

[23]   ECF 22.

[24]   *Id.*

[25]   ECF 26. McQuilkin filed a memorandum in support, along with several exhibits. ECF 26-1; ECF 26-2; ECF 26-3; ECF 26-4; ECF 26-5. Rahmaan opposed the motion. ECF 28; ECF 28-1.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Am. Dental Ass'n v. Cigna Corp.,* 605 F. 3d 1283, 1289 (11th Cir. 2010) (quoting

*Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff

pleads sufficient factual content for the court to draw the reasonable inference that

the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

556 U.S. at 678. A complaint must also present sufficient facts to "'raise a

reasonable expectation that discovery will reveal evidence' of the claim." *Am.*

*Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true,

and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff.'" *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296

(11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261

(11th Cir. 2006)). By contrast, the Court is not bound to accept legal conclusions as

true. *Iqbal*, 556 U.S. at 678–79.

III.    **DISCUSSION**

a.      **Evidence Considered on a Motion to Dismiss**

As an initial matter, the Court must determine what evidence outside the four corners of the Second Amended Complaint it can consider on McQuilkin's motion. Rahmaan did not attach any documents to the Second Amended Complaint but references the arrest warrant, witness interviews, an investigating officer's incident report, and the notice filed by the DeKalb County District Attorney's Office that charges would not go forward against him.[26] McQuilkin asserts that, by referencing these documents, Rahmaan incorporated them into the Second Amended Complaint. McQuilkin has attached to his motion the criminal arrest warrant,[27] an incident report from an officer investigating the shootings,[28] a notice of disposition of charges,[29] and five witness statements concerning the incident.[30] Rahmaan agrees that the arrest warrant is incorporated by reference in

---

[26]   ECF 22, at 2–3.

[27]   ECF 26-2.

[28]   ECF 26-3.

[29]   ECF 26-4.

[30]   ECF 26-5.

the Second Amended Complaint but disputes that his pleading incorporated the other documents.[31]

"A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). The Court is permitted to "incorporate by reference" and consider documents attached to a motion to dismiss "without converting the motion into one for summary judgment" if the documents are "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). "'Undisputed" in this context means that the authenticity of the document is not challenged." *Id.* at 1134.

Rahmaan disputes the authenticity of each of the documents McQuilkin seeks to have incorporated by reference, apart from the arrest warrant, because he did not create them and does not have firsthand knowledge of their contents.[32] The Court is skeptical of Rahmaan's authenticity challenges. Given the public nature of the documents, their authenticity is likely established under Rule 901(7) of the Federal Rules of Evidence, and Rahmaan's lack of firsthand knowledge regarding

---

[31]   ECF 28-1, at 12.

[32]   *Id.* at 13.

their content or creation is irrelevant to this analysis. The Court nonetheless finds that the documents should not be incorporated into the Second Amended Complaint under *Horsley.*

The "notice of disposition of charges" document, though referenced in the Second Amended Complaint, is not central to Rahmaan's claims. *Compare Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (contract not central to the plaintiff's claims because it was "not a necessary or essential part of [the plaintiff's] effort to show that she was injured"), *with James v. Hunt*, 761 F. App'x 975, 978 (11th Cir. 2018), *cert. denied*, 140 S. Ct. 154 (2019) (documents from prior lawsuits were properly considered on Rule 12(c) motion where lawsuits were listed in complaint as demonstrating pattern of racketeering and as part of conspiracy to monopolize). The disposition occurred after Rahmaan's allegedly unlawful arrest. While it could support his position that probable cause did not exist, the Court must treat that well-pleaded allegation as true at this stage anyway. *Bryant*, 187 F.3d at 1274.

Further, as to the witness statements and the incident report McQuilkin seeks to incorporate, it is unclear based on the record whether additional

statements or reports exist.[33] The Court will not rely on incomplete accounts of the incident on a motion to dismiss. *Horsley*, 304 F.3d at 1135 (incorporation not warranted where authenticity of transcripts was disputed and transcripts did not include all recorded statements). The Court, therefore, will incorporate by reference the arrest warrant, attached as Exhibit A to McQuilkin's motion,[34] but will not incorporate the remaining documents, Exhibits B, C, and D.[35]

### b.    Qualified Immunity

"While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). To survive a motion to dismiss on the basis of qualified immunity, the complaint must "allege the violation of a clearly established constitutional right." *Id.* (internal quotation marks omitted) (citations omitted).

Rahmaan bases his 42 U.S.C. § 1983 claim against McQuilkin on three constitutional violations: (1) false arrest for securing Rahmaan's arrest warrant

---

[33]   *See* ECF 26-1, at 6 ("Police interviewed *at least* five witnesses on the night of the shooting.") (emphasis added); ECF 28-1, at 13 ("In fact, there were many investigating officers who wrote incident reports.").

[34]   ECF 26-2.

[35]   ECF 26-3; ECF 26-4; ECF 26-5.

without probable cause to do so; (2) false imprisonment for placing Rahmaan in custody without probable cause; and (3) malicious prosecution for securing the arrest warrant through false statements when no probable cause existed. Although these causes of action resemble each other in many respects, the Eleventh Circuit recently emphasized an important distinction. "A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. These claims accrue when either the seizure ends or the plaintiff is held pursuant to legal process. Malicious prosecution, in contrast, requires a seizure 'pursuant to legal process.'" *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (internal citations omitted) (citing *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) and *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)). Here, Rahmaan was arrested and detained under the authority of a warrant; therefore, his § 1983 cause of action can only be based on malicious prosecution, which is a "shorthand way of describing certain claims of unlawful seizure under the Fourth Amendment." *Id.* at 1157.

To establish a violation of his Fourth Amendment right to be free from unreasonable seizure, Rahmaan must show "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id.* at 1165. To do so, Rahmaan must establish

"either that the officer who applied for the warrant should have known that his

application failed to establish probable cause or that an official, including an

individual who did not apply for the warrant, intentionally or recklessly made

misstatements or omissions necessary to support the warrant" and that the seizure

would not have been constitutional absent a warrant. *Id.*

McQuilkin moved to dismiss Rahmaan's § 1983 claim on the basis of

qualified immunity. According to McQuilkin, because he had probable cause to

arrest Rahmaan, he did not violate Rahmaan's constitutional rights and he is

immune from liability. Although this argument "would have force in the context

of a false-arrest claim," the relevant determination—as noted above—is what

information was known and presented to the magistrate judge in securing the

arrest warrant. *Id.* at 1158, 1165. "In other words, warrantless arrests concern

whether the facts known to the arresting officer establish probable cause, while

seizures pursuant to legal process concern whether the judicial officer who

approved the seizure had sufficient information to find probable cause." *Id.* at

1162–63 (11th Cir. 2020).

Taking the well-pled allegations in the Second Amended Complaint as true,

McQuilkin intentionally or recklessly misstated that witness accounts conflicted

with Rahmaan's statements and falsely testified that Rahmaan was the initial

aggressor.[36] There is nothing in the Second Amended complaint establishing what information was provided to the magistrate judge in order to secure the arrest warrant, apart from McQuilkin's allegedly false affidavit.[37] While McQuilkin asks this Court to incorporate and rely on certain witness statements and an investigating officer's incident report to conclude that there was probable cause for Rahmaan's arrest, it is not at all clear whether the magistrate judge had any, some, or all of those materials, or any other information, when issuing the warrant. For purposes of McQuilkin's motion to dismiss, Rahmaan has sufficiently alleged facts to support his contention that the warrant justifying his seizure was constitutionally infirm.

Turning to whether Rahmaan's arrest "would not have been constitutional without legal process," the Court considers whether, absent the alleged misstatements and falsities in the warrant affidavit, probable cause existed for Rahmaan's arrest. McQuilkin claims that he had probable cause to arrest Rahmaan for the murder of Palmer based on the undisputed facts that Rahmaan shot Palmer and Palmer died of gunshot wounds.[38] McQuilkin further argues that Rahmaan's

---

36   ECF 22, at ¶¶ 13–14, 15–27.

37   ECF 26-2.

38   ECF 22, at ¶¶ 8–9.

claim of self-defense does not negate the existence of probable cause because self-defense is an affirmative defense that he, as the arresting officer, was not required to disprove before making the arrest.[39] In support of these contentions, McQuilkin cites *Morris v. Town of Lexington, Alabama*, 748 F.3d 1316 (11th Cir. 2014) and *Gevarzes v. City of Port Orange*, No. 6:12-CV-1126-ORL-37, 2013 WL 610456 (M.D. Fla. Feb. 19, 2013). Those cases are, however, distinguishable. Both cases involved warrantless arrests, which requires a different analysis of relevant information than that applicable here. *Aguirre*, 965 F.3d at 1159.

In *Morris*, the Eleventh Circuit affirmed in part and reversed in part the district court's denial of the defendant officers' motion to dismiss. 748 F.3d at 1319. In relevant part, the court found that the officers had probable cause to arrest the plaintiff after he punched one of them in the face. *Id.* at 1325. "Although Alabama law permits a citizen to use reasonable force in defense of self or property," the court held that this was an affirmative defense to the crime of assault and therefore did not negate the fact that, "once [the plaintiff] punched [the officer], the officers had probable cause, or at the very least arguable probable cause, to believe that [the plaintiff] had committed an assault." *Id.*

---

[39]   ECF 26-1, at 9–10.

Similarly, in *Gevarzes*, a district court in the Middle District of Florida dismissed a § 1983 claim for a warrantless arrest because officers had probable cause to arrest the plaintiff when they arrived at the scene and discovered she had bitten her boyfriend. 2013 WL 610456, at *4–*5. Specifically, the court found that, though it had to accept the plaintiff's claim of self-defense as true, "the fact remains that she bit someone. The law does not require officers to take the possibility of self-defense into account when they arrive on the scene of a domestic disturbance and it is undisputed that one party bit another." *Id.* at *5.

The key distinction between *Morris* and *Gevarzes*, on the one hand, the present case on the other, is that McQuilkin was not present during or immediately after the purported crime, and his sworn statements made in support of his request for an arrest warrant are alleged to have contradicted eye witness statements and incident reports by investigating officers.[40] This distinction is precisely why the relevant information is different for warranted and warrantless arrests.[41] Prior to securing the warrant, McQuilkin had the benefit of multiple written accounts of

---

[40]   ECF 22, at ¶¶ 11–14.

[41]   *Compare Rankin v. Bd. of Regents of Univ. Sys. of Ga.*, 732 F. App'x 779, 781–82 (11th Cir. 2018) (emphasizing that "[o]fficers *on the scene* need not investigate affirmative defenses and the existence of an affirmative defense does not vitiate probable cause *where the officers witness* seemingly unlawful conduct") (emphasis added).

the incident, which purportedly referred to Rahmaan as a victim who acted in self-defense.[42] Under these facts, the Court does not agree that probable cause existed as a matter of law and, therefore, the Second Amended Complaint sufficiently alleges that Rahmaan's arrest would have been unreasonable absent a warrant.

The Court emphasizes, however, that McQuilkin will still be entitled to raise his qualified immunity defense at a later stage in the litigation after more facts are developed. *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1285 (11th Cir. 2000) ("We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.").

### c.   Official Immunity

As to the various state law claims brought by Rahmaan, McQuilkin argues that he is entitled to official immunity.[43]

> Under Georgia's doctrine of official immunity, state public officials generally cannot be held personally liable for discretionary acts performed within the scope of their

---

[42]   ECF 22, at ¶¶ 25–26.

[43]   McQuilkin's position on how to refer to this doctrine is well taken, and, to avoid confusion, the Court will refer to this immunity doctrine as "official immunity," though Georgia courts also refer to it as "qualified immunity." *Pearce v. Tucker*, 299 Ga. 224, 227 (2016), *disapproved of on other grounds by City of Richmond Hill v. Maia*, 301 Ga. 257 (2017) ("Qualified immunity, also known as official immunity . . . . ").

> official authority.. Public officials do not enjoy official
> immunity under Georgia law, however, when "they act
> with actual malice or with actual intent to cause injury in
> the performance of their official functions."

*Davis v. Lang*, 706 F. App'x 551, 556 (11th Cir. 2017) (citing Ga. Const. art. I, § 2,

¶ IX(d), *Murphy v. Bajjani*, 282 Ga. 197, 198 (2007), and *Cameron v. Lang*, 274 Ga.

122, 123 (2001)). The parties do not dispute that McQuilkin performed

discretionary acts in investigating and arresting Rahmaan.[44] The only question for

the Court, therefore, is whether McQuilkin did so with "actual malice."

Rahmaan argues, citing several cases brought under Georgia's malicious

prosecution statute, that McQuilkin acted maliciously because he acted without

any probable cause. Rahmaan is correct that, "[t]o state a malicious prosecution

claim" under Georgia law "the plaintiff must show that the defendant acted

'maliciously and without any probable cause.'" *Davis*, 706 F. App'x at 557 (citing

O.C.G.A. § 51-7-40 and *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2002)). One way

to infer malice for purposes of a malicious prosecution claim is from "a 'total lack

of probable cause.'" *Davis*, 706 F. App'x at 557 (citing O.C.G.A. § 51-7-44 and *Jones

v. Warner*, 301 Ga. App. 39, 41 (2009)). However, "[u]nder Georgia law, 'actual

malice,' as used in the doctrine of official immunity, is conceptually distinct from

---

[44]   ECF 28-1, at 3.

the generic form of malice required to state a malicious prosecution claim." *Davis*, 706 F. App'x at 557. *See also Anderson*, 258 Ga. App. at 160 (although a jury could infer that officer acted with malice if it concluded that officer acted without probable cause "that analysis only applies to the threshold requirements for a tort claim of malicious prosecution").

By contrast, under the doctrine of official immunity, "actual malice requires more than showing that the defendant police officer lacked probable cause." *Davis*, 706 F. App'x at 557. "Actual malice" in the official immunity context means "a deliberate intention to do wrong or the intent to cause the harm suffered by the plaintiffs." *Id.* (quoting *Murphy*, 282 Ga. at 203). The threshold for showing actual malice is high. For example, "the record may support an inference of actual malice where there is evidence indicating that the police officer arrested the plaintiff despite having clear proof that the plaintiff did not commit the crime for which he was arrested." *Id.*

There are no allegations in the Second Amended Complaint regarding McQuilkin's state of mind, what he actually knew when he was securing the arrest warrant, or whether he had animus towards Rahmaan. Regardless of whether Rahmaan has pleaded a "total lack of probable cause," he fails to allege that McQuilkin had "clear proof" that Rahmaan did not commit the crime for which

he was arrested or that McQuilkin deliberately attempted to do wrong by arresting Rahmaan. "[T]he mere allegation of an arrest without probable cause is insufficient to assert malice so as to defeat Georgia official immunity." *Guerra v. Rockdale Cnty., Ga.*, 420 F. Supp. 3d 1327, 1344 (N.D. Ga. 2019) (granting motion to dismiss). Even taking as true the allegedly false testimony McQuilkin gave to obtain the arrest warrant, the Second Amended Complaint fails to allege that "[McQuilkin] intentionally gave false testimony in a deliberate effort to act wrongfully or to harm Plaintiff, which is required for a finding of actual malice." *Id.* As Rahmaan has failed to plead actual malice, McQuilkin is entitled to official immunity under Georgia law. Counts II, IV, and V of the Second Amended Complaint are therefore dismissed.

## IV.   CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** McQuilkin's motion to dismiss. The Court **GRANTS** the motion to dismiss as to the claims for Georgia state law violations and **DENIES** the motion as to the claim for relief under 42 U.S.C. § 1983. McQuilkin shall file his answer to the remaining portions of the Second Amended Complaint within 21 days after entry of this Order. The parties shall file their Joint Scheduling Report and Discovery Plan within 30 days after

entry of this Order. Discovery will commence 30 days after McQuilkin files his

answer.

      **SO ORDERED** this the 11th day of January 2021.

                                                 Steven D. Grimberg
                                   United States District Court Judge