**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ISMAIL RAHMAAN,

    Plaintiff,

               v.

KEITH E. MCQUILKIN,

    Defendant.

Civil Action No.
1:19-cv-02962-SDG

**OPINION AND ORDER**

This matter is before the Court on Defendant Keith E. McQuilkin's motion for summary judgment [ECF 50]. After careful review of the parties' briefing and statements of material facts, the Court **GRANTS** McQuilkin's motion.

**I.    Background**

Unless otherwise noted, the following facts are undisputed. Plaintiff Ismail Rahmaan buys, fixes, and sells motorcycles.[1] On May 13, 2017, Rahmaan went to an apartment complex in DeKalb County, Georgia to sell a dirt bike to Quaveon Palmer and two other men.[2] Rahmaan and Palmer began fighting,[3] and, at one point during the altercation, Rahmaan obtained a gun, hit Palmer with it,[4] and shot

---

[1]    ECF 54-1, ¶ 1.

[2]    *Id.* ¶ 6.

[3]    ECF 53-12, ¶ 3.

[4]    ECF 54-1, ¶ 14.

Palmer multiple times.[5] Palmer died from gunshot wounds.[6] Rahmaan was also shot and taken by ambulance to Atlanta Medical Center.[7]

Several DeKalb County police officers responded to the incident.[8] McQuilkin was not one of them. Officer Luong reported to the apartment complex and prepared an incident report, which listed Rahmaan as the victim and Palmer as the offender.[9] Officer Charles also reported to the apartment complex and later to Atlanta Medical Center to interview Rahmaan.[10] Officer Charles created a report detailing the incident, including Rahmaan's description of events.[11] Later, Detective Shuler of the DeKalb County police department interviewed Rahmaan and prepared case notes, in which he noted that Rahmaan needed to be re-interviewed after he recovered from surgery.[12]

---

5   ECF 53-12, ¶ 3.
6   ECF 54-1, ¶ 16.
7   *Id.* ¶ 21; ECF 53-12, ¶ 4.
8   ECF 54-1, ¶ 23.
9   *Id.* ¶¶ 23–24.
10  *Id.* ¶¶ 26–28.
11  *Id.* ¶¶ 27–28.
12  *Id.* ¶¶ 29–31.

Several witnesses to the altercation were interviewed and gave statements to the DeKalb County officers. Detective Kearney interviewed two witnesses. First, he interviewed Jarius Anderson, who stated that "the older guy start[ed] pistol whipping the younger man. The younger man pulled a pistol and started shooting."[13] Rahmaan was born in 1984 and Palmer was born in 1997.[14] Detective Kearney also interviewed Tabetha Higgins, another witness, who stated that she was inside her apartment and watched the altercation from her window.[15] Higgins stated that the "older man" was punching the "young man" in the head, that "[t]he older man pulled out a gun, the younger man pulled out a gun as well," and that the two wrestled over the guns before they started shooting.[16]

Two days after the altercation McQuilkin reported to work in the homicide unit of the DeKalb County police department.[17] McQuilkin was not the detective in charge of the case involving Rahmaan and Palmer and was only responsible for obtaining the arrest warrant for Rahmaan.[18] The parties dispute what materials

---

[13]  *Id.* ¶¶ 32–33.

[14]  ECF 53-12, ¶ 15.

[15]  *Id.* ¶ 36.

[16]  *Id.* ¶¶ 37–38.

[17]  *Id.* ¶ 5.

[18]  ECF 54-1, ¶¶ 45, 47.

McQuilkin reviewed prior to seeking the warrant. McQuilkin contends that he met with other members of the homicide unit and reviewed the various police reports and witness statements before determining that probable cause existed.[19] Rahmaan disputes that McQuilkin spoke with other members of the homicide unit and that he reviewed reports by Officers Luong and Charles because only McQuilkin's declaration, submitted in support of his summary judgment motion, supports these facts.[20] Rahmaan does not dispute, however, that McQuilkin reviewed the reports of Detectives Shuler and Paden and the field notes of Detectives Hamilton and Kearney.[21] Though Rahmaan disputes that McQuilkin reviewed witness statements, claiming that no evidence supports this, McQuilkin stated in both his deposition and his declaration that he reviewed witness statements.[22]

---

[19] ECF 53-12, ¶¶ 6–7.

[20] *Id.* ¶¶ 6–8. Rahmaan does not suggest that McQuilkin's declaration was a sham, nor does he argue that the Court should not consider the declaration. Indeed, absent inherent inconsistencies, declarations submitted in support of motions for summary judgment are competent evidence that the Court must consider. *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986).

[21] *Id.* ¶ 8.

[22] ECF 53-1, 68:21–70:3; ECF 50-3, ¶ 12.

McQuilkin concluded that Rahmaan was the "older" participant and Palmer was the "younger" participant in the altercation described by Higgins and Anderson.[23] McQuilkin also determined that these witness statements contradicted Rahmaan's version of events.[24] McQuilkin prepared an affidavit and warrant application charging Rahmaan with felony murder.[25] McQuilkin applied for, and was issued, the arrest warrant through a videoconference with DeKalb County Magistrate Judge Juwayn Haddad.[26]

McQuilkin does not recall what he told Judge Haddad,[27] but Judge Haddad typed onto the warrant "Probable Cause: D selling motorbike to V. Argument between two. Shootout between the two. D primary aggressor. Independent witnesses. D's version of events inconsistent with witnesses' version."[28] Rahmaan was arrested at the hospital on May 15, 2017,[29] and was released on June 2 after

---

[23] ECF 53-12, ¶ 14.
[24] *Id.* ¶ 12.
[25] *Id.* ¶ 17.
[26] *Id.* ¶ 18.
[27] *Id.* ¶ 19.
[28] *Id.* ¶ 20.
[29] ECF 54-1, ¶ 53.

DeKalb County Magistrate Judge Howard Indermark dismissed the case.[30] The DeKalb County District Attorney's Office determined that the charges against Rahmaan would not be accused or presented to the grand jury.[31]

Rahmaan filed suit against McQuilkin in the State Court of DeKalb County, Georgia, pursuant to 42 U.S.C. § 1983, alleging violations of Georgia law and his rights under the Fourth Amendment to the United States Constitution.[32] McQuilkin removed to this Court.[33] On McQuilkin's motion,[34] the Court dismissed Rahmaan's state law claims, but found that he stated a plausible Fourth Amendment claim for malicious prosecution.[35] McQuilkin now moves for summary judgment, arguing that the record evidence fails to show that he violated Rahmaan's Fourth Amendment rights and, moreover, that he is entitled to

---

[30]   *Id.* ¶¶ 54–55.

[31]   *Id.* ¶ 56.

[32]   ECF 1-1.

[33]   ECF 1.

[34]   The Court first granted McQuilkin's motion for a more definite statement, ECF 21, after which Rahmaan filed his Second Amended Complaint. ECF 22.

[35]   ECF 36, at 11–16.

qualified immunity.[36] The motion is fully briefed,[37] and both parties have provided statements of material facts,[38] as well as responses to those statements.[39]

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

---

[36]   ECF 50-2, at 2.

[37]   ECF 50-2 (McQuilkin's Brief in Supp. Mot. Sum. J.); ECF 53 (Rahmaan's Opp. Mot. Sum. J.); ECF 53 (McQuilkin's Reply in Supp. Mot. Sum. J.).

[38]   ECF 50-1; ECF 53-11.

[39]   ECF 53-11; ECF 54-1.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the Court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Discussion

The parties agree that the sole claim at issue is Rahmaan's Fourth Amendment cause of action for malicious prosecution.[40] Rahmaan contends that

---

[40] ECF 50-2, at 11; ECF 53, at 1. The Court recognizes that its Order granting in part McQuilkin's motion to dismiss was unclear as to whether Rahmaan's false arrest claim survived. In the Order, the Court found that Rahmaan could only pursue a Fourth Amendment malicious prosecution claim based on the alleged facts, but it did not explicitly dismiss the Fourth Amendment false arrest claim. ECF 36, at 11. Given the parties' agreement and the state of the law, to the extent the Court did not clearly dismiss the Fourth Amendment false arrest claim on McQuilkin's motion to dismiss, it does so now.

McQuilkin made false statements and omitted facts in his arrest warrant affidavit and, in doing so, subjected Rahmaan to an unreasonable seizure.[41] As he did in his motion to dismiss, this time with the benefit of a record, McQuilkin claims he is entitled to qualified immunity. He argues that he did not violate Rahmaan's Fourth Amendment rights and, even if he did, those rights were not clearly established at the time he obtained the warrant for Rahmaan's arrest.[42] Rahmaan responds that questions of material fact exist that preclude summary judgment.[43] The Court agrees with McQuilkin and finds that he did not violate clearly established constitutional rights in applying for the warrant for Rahmaan's arrest.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346

---

[41]  ECF 53, at 1.

[42]  ECF 50-2, at 14–24.

[43]  ECF 53, at 10–15.

(11th Cir. 2002). The parties do not dispute that McQuilkin was acting within his discretionary authority when he was applying for the warrant,[44] and so it is Rahmaan's burden to prove (1) there was a constitutional violation and (2) that violation was of a clearly established constitutional right. *Id.*

### A. Constitutional Violation

To prevail on his Fourth Amendment claim for malicious prosecution, Rahmaan must establish that the arrest warrant "was constitutionally infirm and that his seizure would not otherwise be justified without legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020). Rahmaan can prove that the arrest warrant was constitutionally infirm by establishing either that (1) McQuilkin "should have known that the application failed to establish probable cause" or (2) any official "intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* Rahmaan argues that the arrest warrant was facially invalid, that McQuilkin made false statements and omissions in his warrant application, and that his seizure would not otherwise be justified without legal process. The Court need not consider whether Rahmaan's seizure would have otherwise been justified because it finds that the arrest warrant was facially

---

[44]   *Id.* at 8.

valid and that McQuilkin did not intentionally or recklessly misstate or omit facts in applying for the warrant.

### 1.   The Arrest Warrant Was Facially Valid.

Rahmaan first argues that the arrest warrant was facially invalid because it failed to state that Palmer was killed while Rahmaan was committing a felony, as required under Georgia's felony murder statute, O.C.G.A. § 16-5-1(c), or any facts indicating that Rahmaan committed murder with malice aforethought as required under O.C.G.A. § 16-5-1(a).[45] McQuilkin responds that the factual basis for the warrant, including that Rahmaan shot Palmer multiple times and was the primary aggressor, is sufficient to establish probable cause for the crime of felony murder.[46]

The Eleventh Circuit has held that the "any-crime" rule does not apply to malicious prosecution claims under the Fourth Amendment, and so, to be facially valid, a warrant must contain allegations that, if true, establish probable cause for the accused offense. *Williams*, 965 F.3d at 1159–62. Probable cause "is not a high bar" and conclusive evidence is not required to establish probable cause. *Washington v. Howard*, 25 F.4th 891, 899 (11th Cir. 2022). Instead, in evaluating whether an officer had probable cause to seize a suspect, a court must determine

---

[45]   ECF 53, at 10.

[46]   ECF 54, at 2–4.

"whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Id.* at 902 (punctuation and citation omitted).

Though the affidavit McQuilkin submitted in support of the warrant alleged that Rahmaan acted with malice aforethought, a required element under O.C.G.A. § 16-5-1(a), it specifically states that Rahmaan was being accused of felony murder in violation of O.C.G.A. § 16-5-1.[47] "A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." O.C.G.A. § 16-5-1(c). Under Georgia law, aggravated assault with a deadly weapon is a felony,[48] and may be a predicate offense to felony murder. *Bonner v. Georgia*, 311 Ga. 466, 468 (2021). This is true even when the aggravated assault is itself the cause of the victim's death. In other words, if a person "attempt[s] to inflict a violent injury upon another or inten[ds] to do an act that places another in reasonable apprehension of immediate violent injury," and that aggravated assault causes that other person's death, the underlying aggravated assault serves as the predicate offense for a felony murder charge. *Id.*

---

47  ECF 53-10.

48  Specifically, O.C.G.A. § 16-5-21(a)(2) provides that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

*See also id.* at 468–69 ("The evidence was thus sufficient to support the jury's determination that Bonner committed an aggravated assault against Moses with a deadly weapon resulting in Moses's death, as charged in the indictment. Accordingly, the evidence was sufficient to support Bonner's conviction for felony murder predicated on the aggravated assault."); *Eberhart v. Georgia*, 307 Ga 254, 261–62 (2019) (similar).

The Court agrees with McQuilkin that the warrant contains facts that, if true, support a finding of probable cause for the offense of felony murder. The affidavit McQuilkin submitted states that Rahmaan "did with malice aforethought cause the death of Quaveon Palmer, a human being, by shooting him multiple times with a handgun."[49] The shooting of Palmer with a handgun showed probable cause for an aggravated assault with a deadly weapon, and served as the predicate for the felony murder offense. *Id.* Finding probable cause, the Magistrate Judge noted that there was a shootout between Palmer and Rahmaan during the sale of a motorbike, that Rahmaan was the primary aggressor, and that independent witnesses' versions of events were inconsistent with Rahmaan's version.[50] Accepting these

---

[49]   ECF 53-10.

[50]   *Id.*

allegations as true, there existed probable cause that Rahmaan committed the predicate offense of aggravated assault with a deadly weapon.

Moreover, even if the warrant had been for the offense of malice murder (rather than felony murder), there was probable cause for that charge as well. Under Georgia law malice may be express or implied, and implied malice "may be found when the defendant's conduct exhibits a reckless disregard for human life." *Browder v. Georgia*, 294 Ga. 188, 190 (2013). Specifically, the Georgia Supreme Court has defined implied malice as including "extremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another or to others." *Id.* The statement in the warrant that Rahmaan shot Palmer multiple times with a handgun is sufficient to show that implied malice. The facts alleged in the warrant are thus sufficient to support a finding of probable cause for malice murder. *Id.*

### 2. McQuilkin Did Not Intentionally or Recklessly Misstate or Omit Facts to Obtain the Warrant.

Rahmaan also contends that McQuilkin recklessly made misstatements or omissions to obtain the warrant because the evidence available to McQuilkin at the time did not support an accusation of murder. Rahmaan suggests that McQuilkin made misstatements and that he failed to disclose to the Magistrate

Judge the facts that Palmer and other men attempted to rob Rahmaan, that Rahmaan claimed Palmer hit him in the face with a gun, that Rahmaan sustained life-threatening injuries, that one witness stated that Palmer fired first, and that none of the witnesses saw how the fight began.[51]

The Eleventh Circuit has "employed a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment." *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019). First, a reviewing court must determine "whether there was an intentional or reckless misstatement or omission." *Id.* Second, "the court examine[s] the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Id.*

Nothing in the record supports Rahmaan's argument that McQuilkin made material misstatements to the Magistrate Judge. Rahmaan contends that the statements in the warrant that he was the "primary aggressor" and that his version of events was inconsistent with the witnesses' version were misrepresentations,[52] but both of these statements were supported by the evidence McQuilkin reviewed

---

[51]   ECF 53, at 10–13.

[52]   *Id.* at 11.

prior to obtaining the warrant.[53] The witness statements of Higgins and Anderson indicated that Rahmaan was punching and "pistol whipping" Palmer and that he shot first, suggesting he was the primary aggressor.[54] These statements directly contradict Rahmaan's version of events because he claimed that Palmer hit him with a gun and that Palmer shot first.[55]

Moreover, Rahmaan has not shown that any misrepresentation or omission was intentional or made recklessly. It is Rahmaan's burden to create a "genuine dispute about whether [McQuilkin]'s accusation against him was intentionally false and not, for example, a mistaken belief. General attacks upon a defendant's credibility are not enough to meet this burden. Nor are conclusory allegations and speculation. Instead, [Rahmaan] must 'identify affirmative evidence from which a jury could find that [McQuilkin] lied.'" *Williams*, 965 F.3d at 1165–66. Rahmaan's sole argument regarding McQuilkin's intent is that "[t]he record supports an

---

[53]  As noted, Rahmaan disputes that McQuilkin reviewed these witness statements, but has failed point to anything in the record suggesting either that McQuilkin did not review these statements or that McQuilkin lied in his deposition and his declaration. On summary judgment, "it is not enough for the nonmoving party to merely assert that the jury might, and legally could, disbelieve the moving party's evidence." *Hinson v. Bias*, 927 F.3d 1103, 1115–16 (11th Cir. 2019) (cleaned up).

[54]  *Id.* ¶¶ 12–16.

[55]  *Id.* ¶¶ 9–10.

inference that [McQuilkin] is lying."[56] But Rahmaan utterly fails to point to any evidence supporting such an inference. His general attacks on McQuilkin's credibility are insufficient to create a genuine issue of fact. As Rahmaan has failed to establish a constitutional violation, McQuilkin is entitled to qualified immunity and Rahmaan's claim fails.

### B. Violation of Clearly Established Law

Even had Rahmaan shown a constitutional violation, his failure to demonstrate that McQuilkin violated a clearly established right is fatal to his claim.

> A right is clearly established if (1) a case with facts materially similar has been decided by the United States Supreme Court, the Eleventh Circuit, or the applicable state supreme court before the challenged conduct; (2) a broader, clearly established principle controls the facts of the situation; or (3) the conduct so obviously violates the constitution that prior case law is unnecessary.

*Wade v. Daniels*, 36 F.4th 1318, 1323 (11th Cir. 2022). The Supreme Court has repeatedly cautioned that courts must not define "clearly established laws" generally because "doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018).

---

56   ECF 53, at 13.

Rahmaan contends that he "had a clearly established right to be free from a seizure based on intentional and material misstatements in a warrant application," and cites the Eleventh Circuit opinion in *Williams* for support. Though, in *Williams*, the Eleventh Circuit held that it has been clearly established that an officer cannot knowingly make false statements to obtain an arrest warrant, 965 F.3d at 1168–69, defining the right at issue here at such a high level of generality runs afoul of the Supreme Court's admonition.

Rahmaan's theory is, essentially, that McQuilkin did not conduct a thorough investigation into the shooting and discounted, or failed to review, important evidence in the case file prior to applying for the warrant.[57] Rahmaan fails, however, to cite any controlling precedent or legal principles that establish this standard as a clearly established right. As Rahmaan failed to demonstrate that McQuilkin violated a clearly established right, McQuilkin is entitled to qualified immunity.

---

[57] *Id.* at 10–13.

**IV.   Conclusion**

McQuilkin's motion for summary judgment [ECF 50] is **GRANTED**. Rahmaan's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor McQuilkin and close the case.

**SO ORDERED** this 30th day of September, 2022.

Steven D. Grimberg
United States District Court Judge